UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PAUL FELICE,

                              Plaintiff,                           Case No.: 25 Civ. 6254

             -against-

                                     **VERIFIED COMPLAINT**

SUFFOLK COUNTY, New York, MICHAEL
KOMOROWSKI, Individually, BRIAN
KNUSSMAN, Individually,

                              Defendants.
-----------------------------------------------------------------x

        Plaintiff, PAUL FELICE, by his attorneys The Bellantoni Law Firm, PLLC, for his Verified Complaint respectfully states:

## NATURE OF THE ACTION

        1.     This action seeks declaratory, injunctive, and other relief, to include compensatory damages in at least a nominal amount, economic damages, costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for violations of Plaintiff's Second Amendment rights accruing from the defendants' denial of his right to acquire and possess handguns for self-defense in his home.

## JURISDICTION AND VENUE

        2.     Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution. This action also seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

1

## THE PARTIES

3.      Plaintiff PAUL FELICE (hereinafter "Mr. Felice") is a citizen of the United States and was, at all times relevant herein, a resident of Suffolk County, New York within the jurisdiction of the Suffolk County Police Department Pistol Licensing Bureau.

4.      Defendant MICHAEL KOMOROWSKI ("Komorowski"), sued in his individual capacity only, at all times relevant hereto was employed by Suffolk County in the Suffolk County Police Department (SCPD) as the Lieutenant and Commanding Officer of the Pistol Licensing Bureau ("PLB").

5.      At all times relevant herein, Komorowski had authority delegated to him by the SCPD police commissioner to render final determinations on applications for licenses issued under Penal Law § 400.00, *et seq*.

6.      Defendant BRIAN KNUSSMAN ("Knussman"), sued in his individual capacity only, at all times relevant hereto was employed by Suffolk County in the Suffolk County Police Department (SCPD) as an investigator in the PLB. Knussman was assigned to Mr. Felice's pistol license application.

## CONSTITUTIONAL FRAMEWORK

7.      The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

8.      The Second Amendment codifies a "preexisting right."

 "[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right.

> The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed."
>
> As we said in *United States v. Cruikshank* …[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ...."[1]

9.      The 'inherent right of self-defense' has been central to the Second Amendment right.[2] "Self-defense had little to do with the right's codification; it was the *central component* of the right itself." *Heller*, 554 U.S. at 599 (emphasis supplied).

10.      The Second Amendment right of "the people…unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580.

> " '[T]he people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

*Heller*, 554 U.S. at 580 quoting *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990).

11.      The Fourteenth Amendment provides, in pertinent part: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.

12.      The Second Amendment presumptively protects the right to possess and carry all weapons in common use for self-defense. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S.

---

[1] *District of Columbia v. Heller*, 554 U.S. 570, 592 (emphasis supplied) (citation omitted).
[2] *Heller*, 554 U.S. at 628.

1, 28 ("even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense") citing, *Caetano v. Massachusetts*, 577 U.S. 411, 411–412 (2016) (per curiam) (stun guns).

13.     Handguns are weapons in common use for self-defense and are protected within the scope of the Second Amendment.  *Heller,* 554 U.S. at 628 (recognizing handguns to be "an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [self-defense].").

14.     In *Bruen*, the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*[3], and *Caetano*.[4]

15.     Flatly rejecting 'interest balancing,' the *Bruen* Court laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment: "We reiterate that the standard for applying the Second Amendment is as follows:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, 597 U.S. at 17. ("In sum, the Courts of Appeals' second step is inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny.") (emphasis added) (citation omitted).

---

[3] *McDonald v. Chicago*, 561 U.S. 742 (2010).
[4] "But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, at 2127. See also, *Caetano*,

16.    Where later history contradicts what the text says, the text controls. *Bruen*, 597 U.S. at 36.

17.    The historical analysis conducted in *Bruen* and *United States v. Rahimi*, 602 U.S. 680, 695 (2024) revealed a historical tradition where being armed was *presumed*; regulations to disarm required a court's adjudication of an individual's dangerousness. *See, Bruen*, 597 U.S. at 33 ("Second Amendment's plain text thus presumptively guarantees [plaintiffs'] right to bear arms"]; *Heller*, 554 U.S. at 592 (finding that the plain text "guarantee[s] the individual right to possess and carry weapons in case of confrontation"); *Rahimi*, 602 U.S. at 696-698 (concluding that individuals could be disarmed only if "found by a court to present a threat to others" under the surety statutes and criminal laws).

## MATERIAL FACTS

18.    At all times relevant to this action, Paul Felice was a citizen of the United States, a resident of Suffolk County, New York and resided within the jurisdiction of the Suffolk County Police Department.

19.    Mr. Felice  is part of 'the People' for whom the Second Amendment was codified.

20.    Mr. Felice has no disqualifiers to the possession, purchase, receipt, or transfer of guns under state or federal law.

21.    Mr. Felice owns long guns, which he purchased through a federal firearms licensee (FFL/gun store) after being subjected to, and passing, federal background checks through the National Instant Criminal Background Check System (NICS).

22.    Mr. Felice has never had a gun purchase transaction "denied" by the federal government after being subject to a NICS background check.

23.     Under New York law, it is a crime to possess a handgun in one's home for self-protection without first applying for, and obtaining, a pistol license.

24.     Under New York law, no individual may lawfully purchase a handgun without having obtained a pistol license.

25.     Seeking to purchase and possess handguns for self-defense in his home, Mr. Felice applied to the Suffolk County Pistol Licensing Bureau (PLB) for a New York State pistol license.

26.     Nothing in Mr. Felice's background disqualifies him from possessing guns (handguns, rifles, and shotguns) – whether under state or federal law.

***Suffolk County's 18-Month Licensing Process to Own Handguns for Home Protection***

27.     On September 5, 2022, Mr. Felice commenced the application process for a license to purchase and possess handguns in his home for self-protection.

28.     Mr. Felice placed a non-refundable deposit on a handgun in the amount of $300.

29.     Mr. Felice did not receive an appointment with a PLB investigator until August 30, 2023 – close to one year later.

30.     Mr. Felice's application was assigned to defendant police officer Brian Knussman.

31.     At his interview with Knussman, Mr. Felice was fingerprinted and he signed a form that authorized the PLB to confirm with the New York State Office of Mental Health that he was not prohibited from possessing guns for reasons related to his mental health.

32.     At his interview, Mr. Felice was provided with the statewide licensing application, the New York State PPB-3.

33.     Mr. Felice took the PPB-3 application, had his character references sign the PPB-3, and returned the completed PPB-3 to Knussman.

34.    The PLB submitted Mr. Felice's fingerprints to the FBI and the New York State Police.

35.    The PLB submitted a written inquiry to New York State Office of Mental Health to ascertain whether Mr. Felice was disqualified from possessing guns for reasons related to his mental health.

36.    Neither the FBI, NYSP nor OMH had any derogatory, prohibiting, or disqualifying information concerning Mr. Felice that would interfere with his right to obtain or possess guns.

37.    The criminal and mental health background checks performed by Knussman revealed no information disqualifying Plaintiff from the issuance of a pistol license.

### Suffolk County 'Disclosure of Mental Health Treatment' Policy

38.    Mr. Felice had commenced the application process by completing and filing the PLB Pistol License Applicant Questionnaire (the "Questionnaire").

39.    At all times relevant hereto, the Questionnaire required applicants, including Mr. Felice, to disclose whether they have "ever been evaluated or treated as a result of any mental health issues including, but not limited to depression."

40.    The state licensing regime, Penal Law § 400.00, does not require applicants to disclose whether they have "ever been evaluated or treated as a result of any mental health issues including, but not limited to depression."

41.    The Questionnaire's disclosure requirement is a Suffolk County policy, not a state requirement.

42.    The disclosure policy required Plaintiff to inform the PLB that he was in therapy.

43.    If Plaintiff answered, "No" he would be completing the form dishonestly.

44.     If Plaintiff refused to answer, his pistol license application would have been summarily denied.

45.     Plaintiff answered, "Yes" on the Questionnaire.

46.     Plaintiff has never been committed to a mental health facility.

47.     Plaintiff has never been adjudicated as mentally defective.

48.     Plaintiff has suffered no event or condition giving rise to the loss of Second Amendment-protected rights.

49.     Suffolk County's disclosure policy violates the Second Amendment.

***Suffolk County 'Doctor's Note' & HIPAA Release Policies***

50.     At all times relevant hereto, it was the policy of the PLB to require applicants who answered "Yes" to the question of whether they have "ever been evaluated or treated as a result of any mental health issues including, but not limited to depression" to complete and sign a form entitled, "Pistol Licensing Bureau/Release of Medical Records" authorization form [Exhibit 1].

51.      At all times relevant hereto, it was the policy of the PLB to require applicants who answered "Yes" to the question of whether they have 'ever been evaluated or treated as a result of any mental health issues including, but not limited to depression" to provide a note from a doctor informing the PLB (i) what the applicant was being treated for; (ii) list any medications the applicant was prescribed; (iii) that the applicant is not a danger to himself or others; and (iv) that the applicant is 'safe' to possess guns.

52.     Mr. Felice refused to sign the Release of Medical Records.

53.     Mr. Felice attempted to obtain a letter from his therapist.

54.     It is the policy of Mr. Felice's therapist not to issue a letter indicating that an individual is "safe to possess guns."

8

55.    Plaintiff has never been committed to a mental health facility.

56.    Plaintiff has never been adjudicated as having a mental illness.

57.    Plaintiff has suffered no event or condition giving rise to the loss of Second Amendment-protected rights.

58.    Mr. Felice has never been adjudicated as a person who poses a danger to himself or others.

59.    There is no historical tradition of requiring medical proof *before* or *as a condition* to exercising Second Amendment rights.

60.    Knussman was aware from the background check that Mr. Felice was not a 'prohibited person' under state and federal law.

61.    Knussman informed Mr. Felice that the requirement of a doctor's note and the execution of the Release of Medical Records was "their policy."

62.    Knussman disregarded the fact that one of Mr. Felice's character references is, in fact, a licensed psychologist.

63.    Knussman confirmed that, had Mr. Felice not disclosed that he was seeing a therapist, the PLB "would never have known."

64.    Knussman advised Mr. Felice that he should "withdraw" his application and start over when he can find a doctor who will write him a letter.

65.    Knussman informed Mr. Felice, in substance, "What I allow people to do is to withdraw their application and …start over…if they find a doctor who can sign off for you."

66.    Knussman advised Mr. Felice that he should "withdraw" his application because his application was going to be disapproved if no doctor's note was provided.

67.     Knussman advised Mr. Felice that he should "withdraw" his application because he was going to be disapproved for not signing the Release of Medical Records.

68.     Knussman informed Mr. Felice, "If I disapprove you, you won't be able to reapply for another 2 years. That's why I gave you the option of withdrawal."

69.     Knussman informed Mr. Felice that he agreed, "there is absolutely nothing wrong with you" but the aforementioned requirements are PLB policy.

70.     Suffolk County's requirement that applicants sign a HIPAA authorization for the release of their mental health records violates the Second Amendment.

71.     Suffolk County's requirement that applicants provide a doctor's note violates the Second Amendment.

72.     Suffolk County's requirement that applicants provide their medical and/or mental health records violates the Second Amendment.

***Denial of Pistol License***

73.     Mr. Felice did not receive a determination on his pistol license application until January 2024.

74.     Mr. Felice's lengthy wait time for an appointment with an investigator was not unique.

75.     Mr. Felice's lengthy wait time for a determination on his pistol license application was not unique.

76.     At all times relevant to this action, the PLB average processing time for pistol licenses was 18 months.

77.    At the December 15, 2022 meeting of the Public Safety Committee of the Suffolk County Legislature, Defendant Komorowski testified that the application process to obtain a pistol license for one's residence is "18 months."

78.    At that same meeting, testimony revealed that the application process for a pistol license through the Suffolk County Sheriff's Office was "six weeks" and Nassau County was "significantly less time."

79.    Legislative Presiding Officer Kevin McCaffrey correctly informed Lt. Komorowski and Captain Manfredonia that, "18 months for someone is too long of a time and I don't think it complies with what, you know, their rights are under the Constitution and is newly advised law that was passed by the Supreme Court…"

80.    Captain Manfredonia conceded that the Legislature "has brought the [same] concerns before the Police Department in the past…"

81.    Suffolk County's lengthy wait time for a license violates the Second Amendment.

82.    By letter dated January 10, 2024, Defendant Komorowski issued a letter to Mr. Felice advising him that his application for a pistol license was denied [Exhibit 2].

83.    Mr. Felice was denied the right to possess handguns based on the following:

- "Failure to submit a doctor's note"; and

- "Good cause" to deny the license.

84.    Komorowski barred Mr. Felice from reapplying for a pistol license for two years – until after January 10, 2026.

85.    Under the Second Amendment, 'The People' begin with the presumption that they are entitled and guaranteed the right to possess arms for self-defense.

86.     Nothing in Mr. Felice's background supports the belief that he poses a danger to himself or anyone else, that he is a "dangerous" person, nor has he ever been adjudicated as a "dangerous" person.

### *'Good Cause' to Deny a Pistol License Was Repealed in 2022*

87.     The "good cause" to deny factor was repealed from § 400.00(1)(g) when the Concealed Carry Improvement act (CCIA) was enacted in 2022.

88.     There is no statutory "good cause" under the Penal Law to deny a handgun license.

89.     The repealed "good cause" factor, like the stricken "proper cause" factor, is a subjective, unconstitutional basis to prevent an individual from possessing handguns.

90.     Defendants' denial of Mr. Felice's handgun license application absolutely foreclosed his right to purchase and possess a handgun in his home for self-protection.

91.     Defendants' denial of Mr. Felice's handgun license application violated his Second Amendment rights.

### *Suffolk County's Two-Year Injunction on Reapplying*

92.     No provision of Penal Law § 400.00 authorizes a licensing officer to prevent an individual from reapplying for a firearm license for any period of time.

93.     It exceeds the scope of the licensing officer's authority under Penal Law § 265.00(10) to prevent an applicant from reapplying for a license issued under § 400.00. See, *Goldstein v. Schwartz*, 185 A.D.3d 929, 930 (2d Dept. 2020) ("the licensing officer was without authority to bar the petitioner from re-applying for an unrestricted pistol permit for one year…The issuance of the injunction was beyond the scope of his powers to either deny or grant the application (see Penal Law § 400.00 [4-a])").

94.    In May 2025, Mr. Felice relocated to Tennessee.

95.    Though Tennessee is a constitutional (permitless) carry state for open and concealed carry, Mr. Felice applied for a handgun carry permit from the State of Tennessee.

96.    In August 2025, the State of Tennessee issued Mr. Felice a handgun carry permit [Exhibit 3].

97.    Mr. Felice suffered an injury-in-fact, to wit, the absolute barrier to conduct covered by the plain text of the Second Amendment as a direct result of Defendants' actions and enforcement of Suffolk County policies.

98.    Mr. Felice seeks to hold Defendants personally liable for the violation of his constitutional rights through, *inter alia*, an award of compensatory monetary damages in at least a nominal amount.

## AS AND FOR A FIRST CAUSE OF ACTION

99.    Repeats and realleges paragraphs "1" through and including "98."

100.    Under the theory that Defendants violated the plaintiff's Second Amendment rights. 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION

101.    Repeats and realleges paragraphs "1" through and including "100."

102.    Under the theory that the Suffolk County Policies complained of herein are unconstitutional in violation of the Second Amendment, facially and as applied to the plaintiff. 42 U.S.C. § 1983.

### AS AND FOR A THIRD CAUSE OF ACTION

103.    Repeats and realleges paragraphs "1" through and including "102."

104.    Under the theory that Suffolk County is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of Plaintiff's Second Amendment rights as plead herein, 42 U.S.C. § 1983.

WHEREFORE, the plaintiff respectfully requests that this Court issue a Judgment and Order:

- Finding that the defendants' conduct violated the plaintiff's Second Amendment rights;

- Awarding compensatory damages to the plaintiff;

- Awarding economic damages to the plaintiff;

- Awarding presumed nominal damages to the plaintiff for the violation of his constitutional rights;

- Awarding reasonable statutory attorney's fees to the plaintiff pursuant to 42 U.S.C. § 1988;

- Awarding costs and disbursements to the plaintiff; and

- Awarding such other, further, and different relief as this Court may deem just and proper.

Dated: November 7, 2025
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiff*

By:    *Amy L. Bellantoni*
Amy L. Bellantoni, Esq.
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PAUL FELICE,

                                        Plaintiff,                    Case No.: 25 Civ.

          -against-

                                                            **DECLARATION**
SUFFOLK COUNTY, New York, MICHAEL              **OF PAUL FELICE**
KOMOROWSKI, Individually, BRIAN
KNUSSMAN, Individually,

                                        Defendants.
-----------------------------------------------------------------x

        PAUL FELICE, declares pursuant to 28 U.S.C. §1746 that:

        1.      I am the plaintiff in the above-captioned matter.

        2.      I have reviewed the Verified Complaint drafted by my attorney, the factual

statements of which are true and accurate to the best of my knowledge and recollection and, where

stated upon information and belief, I believe the same to be true.

        I declare the foregoing under the penalties of perjury.

Dated: November  , 2025

                              _Paul Felice_____
                              Paul Felice

_11/07/2025_